14 F.3d 598
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Henry PIFER, Sr., Defendant-Appellant.
 No. 93-5675.
 United States Court of Appeals, Fourth Circuit.
 Submitted Jan. 7, 1994.
Decided Jan. 7, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Samuel G. Wilson, District Judge. (CR-92-104-R)
 Robert F. Rider, Rider, Thomas, Cleaveland, Ferris & Eakin, Roanoke, Virginia, for Appellant.
 Robert P. Crouch, Jr., United States Attorney, Ray B. Fitzgerald, Jr., Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before HALL, MURNAGHAN, and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Thomas Henry Pifer, Sr., was convicted by a jury of providing a "kickback" in connection with government agency contracts, in violation of 41 U.S.C. Secs. 53(1), 54 (1988). Pifer was also tried, but acquitted, of conspiracy to provide, attempt to provide, or offer to provide a kickback, in violation of 41 U.S.C. Secs. 53(1), 53(2) (1988). He appeals the district court's denial of his motion for acquittal, and the admission, over his objection, of testimony concerning additional conspiracies. For the reasons set forth below, we affirm Pifer's conviction.
 
 I.
 
 2
 The charges stemmed from Pifer's employment at Hercules, Inc., the prime contractor operating the Radford Army Arsenal for the United States (the "Arsenal"). As Pifer was approaching retirement from Hercules, he and James Headley, a subordinate employee in a related office, discussed Pifer's creation of a business organization to do business with Hercules. Pifer and Headley discussed the procedure for putting this company, M & T Enterprises, on the bidding list for comparatively small jobs to be done around the plant. The parties stipulated that the contracts in question were to provide supplies, equipment, or services to the United States.
 
 
 3
 While Headley did not have formal contracting authority to select bids, Headley testified at trial that he had authority to decide whether to request quotes, and to recommend individual vendors for particular jobs for the Arsenal. The final decision on which vendor would be selected was made by the purchasing department.
 
 
 4
 Pifer formed M & T, which was selected to perform a small job for the Arsenal. The evidence revealed that M & T came in with the low bid for this particular job, but that the bid was several days late, and the last bid received.
 
 
 5
 Headley testified that he helped put Pifer on the bid list. Headley further testified that he and Pifer had agreed that Pifer would receive fifty percent of the proceeds of any business placed with the Arsenal, and that Headley would split the remaining fifty percent with Pifer's son and daughter-in-law. Pifer then gave Headley a check for $184.27, representing his share of the job M & T performed, and reviewed with Headley an accounting of the job that supported his share. On the check, the word "Commission" appeared on the memo line. Pifer asserted at trial that the $184.27 was a loan to Headley because Headley had stated that he was in dire financial straits.
 
 
 6
 Pifer admitted to the FBI Special Agent who interviewed him that the check was written in response to a request from Headley for money, and that the amount was computed to represent approximately twenty-five percent of the profits M & T earned dealing with the Arsenal. Pifer admitted at trial that he paid Headley partly in consideration for Headley putting M & T on the bid list, and that the check amount represented a share of the M & T profits from the job M & T did after being put on that list.
 
 
 7
 Headley testified that Pifer was the first of three outside vendors which Headley "assisted" in obtaining Arsenal business. Pifer objected to this testimony.
 
 II.
 
 8
 In assessing the sufficiency of evidence to support a jury's guilty verdict, we evaluate whether, in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). We consider circumstantial as well as direct evidence, and the government is given the benefit of all reasonable inferences from the facts established to those sought to be proven. Id. This Court does not weigh evidence or review witness credibility. United States v. Arrington, 719 F.2d 701, 704 (4th Cir.1983), cert. denied, 465 U.S. 1028 (1984).
 
 
 9
 Pifer sought reversal of the district court's denial of his motion for judgment of acquittal on the ground that the Government failed to present sufficient evidence from which the jury could infer that Pifer provided a kickback to Headley.
 
 
 10
 According to Headley's testimony, he and Pifer expressly agreed that Headley would steer Arsenal business to M & T in exchange for a stated percentage of the profits, and that he received a check from Pifer in fulfillment of that agreement. Pifer admitted that the check he gave Headley was, in part, to compensate Headley for his assistance in M & T's obtaining the government contract. While Pifer asserts that the money was a loan to Headley, the word "Commission" was written on the check.
 
 
 11
 We find that this evidence, taken in the light most favorable to the Government, was sufficient to lead any rational jury to conclude that Pifer provided a kickback to Headley, either as a payment in satisfaction of the agreement, or a reward for past favors, in violation of 41 U.S.C. Secs. 52(2), 53. Accordingly, we affirm the district court's denial of Pifer's motion for acquittal.
 
 III.
 
 12
 Pifer's second contention on appeal is that the trial court committed reversible error in admitting evidence of other conspiracies unrelated to Pifer. The record reveals that the district court admitted the evidence to which Pifer objected based on the Government's continuing conspiracy theory. Because Pifer was being tried on a conspiracy charge, we find that this evidence was relevant. Moreover, because the jury acquitted Pifer of participation in the conspiracy, any error was harmless.
 
 
 13
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 14
 AFFIRMED.